IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VERNITA M. MURDOCK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | No. 4:10cv56 |
| | § | Jury Trial Demanded |
| CITY OF HOUSTON and | § | |
| ARAMARK SPORTS FACILITIES, | § | |
| L.L.C., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO ARAMARK'S MOTION FOR SUMMARY JUDGMENT

Plaintiff files this response to Defendant Aramark Sports Facilities, L.L.C. Motion for Summary Judgment.

I.   The Bulk of Aramark's Motion Addresses Claims That Are Not in the Case.

Ms. Murdock has pleaded a claim for relief based on a sexually hostile work environment. Ms. Murdock was an employee of Aramark at the George R. Brown Convention Center ("GRB"), working with other Aramark employees and with employees of the City of Houston. She was sexually harassed by her City supervisor, Albert Evans.

Aramark spends over three pages of its motion addressing a *quid pro quo* harassment claim: whether Ms. Murdock was terminated by Aramark because she rejected Evans' sexual advances. Aramark Motion at 6-9. Ms. Murdock makes no such claim. Instead, Ms. Murdock was one of several employees who were terminated for accepting carpet samples from an exhibitor at the GRB in violation of Aramark's rules. Aramark now refers to this as "stealing carpet samples" (Aramark Motion at 5), but in fact Ms. Murdock did not "steal" anything. In any event, Ms. Murdock has not pleaded a claim based on her termination.

Aramark also spends over a page of its motion addressing sex discrimination and retaliation claims. Aramark Motion at 16-17. <u>Again, Ms. Murdock makes no such claims</u>. Aramark states that "Murdock's sworn testimony makes it clear that she is not pursuing a claim of either sex discrimination or retaliation." Aramark Motion at 17. Aramark could have deduced that fact simply by reading the Complaint.

II.  <u>Ms. Murdock Has a Valid Claim for Sexual Harassment</u>.

   A.  <u>Aramark Had No Effective Policy for Reporting Sexual Harassment and Failed to Promptly Respond to Ms. Murdock's Complaints</u>.

The bulk of Aramark's argument on the hostile work environment claim is that Ms. Murdock never reported her claims to Aramark and that Aramark took reasonable remedial actions once it learned of her claims. With respect to the reporting of the claim, the Supreme Court has held that an employer must establish two elements:

> An employer may defend against such a claim by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). Aramark cannot meet either element of that defense.

The summary judgment evidence relevant to Aramark's affirmative defense is the following:

   (1)  When Aramark hired Ms. Murdock, it <u>did not</u> advise her of its sexual harassment policy. Murdock Dep. at 173-74 (excerpts attached as Exhibit 1). Ms. Murdock did not learn of the policy until months later. Murdock Dep. at 174.

   (2)  Evans began to harass Ms. Murdock on the first day of her employment. Ms. Murdock attempted to contact her Aramark supervisor, Vanessa Hernandez, that

        same day. She left a message for Ms. Hernandez with the Aramark employee who answered the phone (Linda Mitchell), but Ms. Hernandez did not respond. Murdock Dep. at 58-63. She told Ms. Mitchell (who is Ms. Murdock's sister) that she had been sexually harassed.

(3) This pattern was repeated on the second day. Murdock Dep. at 67-68. On the third day, she attempted to contact Ms. Hernandez yet again. She told the Aramark employee who answered the phone (Laura Nunez) that she wanted to talk to Ms. Hernandez about sexual harassment. Murdock Dep. at 74-75.

(4) At one point, Ms. Murdock went to Ms. Hernandez's office to discuss the matter, but Ms. Hernandez would not open the door. Murdock Dep. at 78-79.

(5) After about three months of enduring sexual harassment, Ms. Murdock figured out how to make a complaint directly to the City of Houston. Murdock Dep. at 104-05. The City eventually launched an investigation.

In light of those facts, Aramark's defense must fail. <u>First</u>, Aramark did not have "a readily accessible and effective policy for reporting and resolving complaints of sexual harassment." *Suder*, 542 U.S. at 134. Aramark did not provide its sexual harassment policy to Ms. Murdock until after the fact. Furthermore, Ms. Murdock's supervisor ignored her and even avoided her by refusing to open her door. <u>Second</u>, Ms. Murdock did not act unreasonably. She made multiple attempts to report the harassment to Ms. Hernandez, including telling two other Aramark employees that she needed to talk to Ms. Hernandez. She finally found an alternative means of reporting the harassment (a complaint to the City) on her own. Significantly, Aramark fails to suggest anything that Ms. Murdock should have done differently.

Aramark is aware of all of these facts, given that its counsel took Ms. Murdock's deposition. Nonetheless, Aramark fails to address or even mention any of these facts in its motion.

Aramark also claims that it took prompt remedial action after it actually learned of the harassment. Aramark Motion at 12-13. However, the relevant time period for judging "promptness" does not run from the date of <u>actual</u> knowledge, but instead runs from when the employer "knew or should have known" of the harassment. *Hockman v. Westward Communications, L.L.C.,* 407 F.3d 317, 325-26 (5th Cir. 2004). In this case, Aramark knew or should have known about the harassment when Ms. Murdock informed Ms. Mitchell and Ms. Nunez during her first three days of work. While Ms. Mitchell and Ms. Nunez are not supervisors, they are nonetheless agents and employees of the company. Ms. Murdock made a bona fide attempt to speak with her supervisor, Ms. Hernandez, about the harassment, but Ms. Hernandez failed to respond to Ms. Murdock's messages and later avoided meeting with Ms. Murdock by refusing to open her door. Aramark must therefore be charged with actual or constructive knowledge of the harassment from the very beginning.

By the time that Aramark did anything at all, Ms. Murdock had endured over three months of harassment. This lawsuit is based on the three months in which Ms. Murdock endured sexual harassment, not the time period after which Aramark belatedly addressed the issue. Aramark's response was neither prompt nor effective.

In addition, Aramark neglects to mention that the EEOC entered findings against Aramark, concluding that Aramark failed to properly respond to the sexual harassment claim by Ms. Murdock. Exhibit 2 to this Response. The EEOC noted that Aramark failed to conduct an appropriate investigation and failed to take appropriate remedial action with respect to Evans.

In sum, Aramark's arguments are without merit. Aramark did not have an effective policy in place to address sexual harassment complaints by employees such as Ms. Murdock, and it took no action until months after Ms. Murdock began her efforts to seek help.

  B. <u>The Sexual Harassment Affected the Terms and Conditions of Ms. Murdock's Employment</u>.

Aramark also argues that the conduct of Evans was not sufficiently severe to affect the terms and conditions of Ms. Murdock's employment. Aramark's argument consists of the citation of various cases setting forth the legal standard, followed by a string citation of various cases in which courts found that various fact patterns did not meet the standard. Aramark never addresses the specific facts of this case. Instead, Aramark merely opines that Evans' behavior "was simply not egregious enough." Aramark Motion at 10-12.

The Fifth Circuit set forth the relevant legal standard for the "terms and conditions of employment" element as follows:

> For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive. Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances. Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained-of conduct undermines the plaintiff's workplace competence.

*Hockman,* 407 F.3d at 325-26 (citations omitted). Aramark does not address any of those factors.

In this case, the summary judgment concerning Evans' behavior toward Ms. Murdock is as follows:

  (1) Evans fondled himself in front of Ms. Murdock on the first day of her employment. Murdock Dep. at 58. He did the same thing on many other occasions. Murdock Dep. at 72-73, 82, 118.

Plaintiff's Response to Aramark's Motion for Summary Judgment
Page 5 of 8

(2) Evans kept trying to be alone with Ms. Murdock, calling her "Babe" on one occasion and boasting about his sexual relationship with other women at GRB on other occasions. Murdock Dep. at 61-62, 71-72, 90-91. Evans would always walk with Ms. Murdock, and not with the male employees. Murdock Dep. at 89-90.

(3) Evans pointed out another woman who quit after refusing his advances. Murdock Dep. at 86-87.

(4) Evans pulled on her shirt and tried to hug her. Murdock Dep. at 88.

(5) Ms. Murdock felt so much stress from this harassment that she took a day off from work after working for Aramark for just two months. Murdock Dep. at 85.

(6) Later, Evans told Ms. Murdock that he wanted to get between her legs. Murdock Dep. at 113-14.

(7) Evans offered to pay Ms. Murdock for sex, which she refused. Murdock Dep. at 120-21.

There can be no doubt that this conduct was "objectively hostile and abusive." The conduct was frequent and continued for over three months. It was severe and humiliating, in that Evans fondled himself in front of Ms. Murdock, told her that he wanted to get between her legs, and even went so far as to offer to pay her for sex. It interfered with Ms. Murdock's performance of her work, in that Ms. Murdock actually had to take a day off to cope with the stress.

Aramark cites *Hockman* for the proposition that the conduct described by Ms. Murdock does not meet the legal standard. However, *Hockman* involved a handful of minor, discrete incidents over an eighteen month period:

> Here, Hockman claims that in the approximate year and a half that she worked for Westward, Rogers harassed her in the following ways: (1) he once made a remark

> to Hockman about another employee's body, (2) he once slapped her on the behind with a newspaper, (3) he "grabbed or brushed" against Hockman's breasts and behind, (4) he once held her cheeks and tried to kiss her, (5) he asked Hockman to come to the office early so that they could be alone, and (6) he once stood in the door of the bathroom while she was washing her hands.

407 F.3d at 328. Those facts are not comparable to the current case, which involves a supervisor who often fondled himself in front of Ms. Murdock, who made multiple advances to Ms. Murdock, who told Ms. Murdock that he wanted to get between her legs, and who offered to pay Ms. Murdock for sex. This happened during a three month period, and it caused Ms. Murdock to miss work due to stress.

The facts of this case are not analogous to the facts of *Hockman* or the other cases cited by Aramark. The conduct in this case was much more severe, it was much more frequent, and it actually interfered with Ms. Murdock's ability to do her job. Aramark's motion is thus without merit.

III.   Conclusion

For the foregoing reasons, Aramark's motion should be denied.

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863

ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

  I certify that a true and correct copy of this pleading was sent either electronically, by fax, or by regular mail, postage prepaid, to all counsel of record on April 12, 2011.

              /s/ David C. Holmes
              David C. Holmes